639 So.2d 378 (1994)
Jerald D. THOMAS, Plaintiff-Appellee,
v.
Myles C. BRYANT and Theresa I. Bryant, Defendants-Appellants.
No. 25,855-CA.
Court of Appeal of Louisiana, Second Circuit.
June 22, 1994.
*379 Bodenheimer, Jones, Klotz & Simmons, Shreveport, for appellant.
Ronald J. Miciotto, Shreveport, for appellee.
Before SEXTON, VICTORY and BROWN, JJ.
BROWN, Judge.
Plaintiff, Jerald Thomas, instituted this action to collect a promissory note. Defendant, Myles Bryant, admitted his signature as co-maker of the note but claimed lack of consideration, fraud and nonperformance. Bryant appeals the trial court's judgment for plaintiff. We affirm.

FACTS
Myles and Theresa Bryant, husband and wife, jointly executed a promissory note for $5750 payable to Jerald Thomas on February 22, 1989. At that time, David Thomas, the 21-year-old son of Jerald Thomas and Theresa Bryant, was in Charter Forest Hospital because of alcohol and drug abuse problems. The amount of the note represented one-half of the medical bill owed to Charter Forest Hospital.
On November 28, 1989, Thomas filed suit against Myles and Theresa Bryant, seeking payment of the note, together with interest and attorney fees. Though married when *380 the note was executed, defendant, Myles Bryant, and David's mother, Theresa Bryant, separated and at the time of trial were divorced. Myles Bryant answered plaintiff's petition asserting lack of consideration, fraud and ill practices, and nonperformance of the conditions of the agreement.
A default judgment was rendered against Theresa Bryant on April 2, 1990. Thomas successfully moved for summary judgment against Myles Bryant. This court granted a writ to review the summary judgment decision. The trial court's judgment was reversed and the case remanded for trial because material issues of fact remained unresolved. Thomas v. Bryant, 597 So.2d 1065 (La.App.2d Cir.1992). Trial was held on January 15, 1993.

DISCUSSION

CAUSE
Plaintiff initially carried his burden of proof when Bryant admitted his signature as co-maker of the promissory note. As between the parties to the instrument, however, Bryant could assert all defenses available in a contract action. See Thomas v. Bryant, supra. A civil obligation grants to the creditor the right to enforce its performance. Consideration for the civil obligation, in the context of a negotiable note, is what is received in return for the obligation. LSA-R.S. 10:3-408. An obligation cannot exist without a lawful cause. LSA-C.C. art. 1966. Cause is the reason a party enters into an obligation. LSA-C.C. art. 1967.
In this case, Bryant had no civil or legal duty to pay any part of the medical charges incurred by his adult stepson. Although he had no legal duty to pay, when Bryant executed the promissory note, he entered into a promise to pay half of these expenses. For this promise to be enforceable, consideration or a lawful cause must be shown. While a natural obligation is not judicially enforceable, it can serve as the cause or consideration for a civil obligation. LSA-C.C. art. 1761.
The Louisiana Civil Code does not define natural obligations, but states that they arise from circumstances in which the law implies a particular moral duty to render a performance. LSA-C.C. art. 1760; Litvinoff, The Law of Obligations § 2.2, 5 Louisiana Civil Law Treatise (1992). A moral duty is traditionally defined as a duty of conscience; a legal duty, on the other hand, is correlative of a right to demand a performance. Litvinoff, supra, § 2.2.
Not every moral duty will serve as the basis of a natural obligation. In order for a duty to rise to the level of a natural obligation, the following requirements must be present:
(1) The moral duty must be felt towards a particular person, not all persons in general.
(2) The person involved feels so strongly about the moral duty that he truly feels he owes a debt.
(3) The duty can be fulfilled through rendering a performance whose object is of pecuniary value.
(4) A recognition of the obligation by the obligor must occur, either by performing the obligation or by promising to perform. This recognition brings the natural obligation into existence and makes it a civil obligation.
(5) Fulfillment of the moral duty must not impair the public order.
Litvinoff, The Law of Obligations § 2.4, 5 Louisiana Civil Law Treatise (1992).
The issue of whether a natural obligation arises from a particular situation is raised only after a person has voluntarily rendered a performance or has promised to perform. Litvinoff, supra, § 2.6. If in performing or promising to perform, the person was obeying dictates of his conscience that prompted him to fulfill a strongly felt moral duty, the performance is valid and cannot be reclaimed or the promise is valid and is enforceable by the creditor. The person's belief in the existence of the moral duty is as important as its reality. Id.
Great discretion must be exercised by the courts in determining whether, in a given situation, a moral duty rises to the level of a natural obligation. Id.
*381 When asked why he signed the note, Bryant testified that he did so because his friend and stepson, David Thomas, needed help. According to Bryant, when David was approximately three weeks into the treatment program, Thomas told Bryant that he could no longer afford to keep David in Charter Forest and that he would have to take his son out of treatment. Bryant stated that he executed the note in order to keep David in the treatment center. Bryant testified that he and Thomas agreed that Thomas would pay Charter Forest and that Bryant would reimburse him one-half of the cost of David's treatment. According to Bryant, he executed the note voluntarily, not out of any sense of obligation, financial or otherwise.
The trial court found that Bryant, David Thomas's friend and stepfather, specifically intended to fulfill a duty of natural justice and that this natural obligation was the legal cause for the note's execution.
An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State of Louisiana, through DOTD, 617 So.2d 880 (La. 1993); Rosell v. ESCO, 549 So.2d 840 (La. 1989); Whitaker v. Mullinax, 628 So.2d 222 (La.App.2d Cir.1993). The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Stobart, supra; Dismuke v. Grambling State University, 25,482 (La. App.2d Cir. 04/05/94), 637 So.2d 555.
Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart, supra; Rosell, supra. When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings. Rosell, supra; Dismuke, supra. Credibility calls are the function and prerogative of the trial court. Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992).
Bryant testified that he executed the promissory note voluntarily and that he was willing to bear one-half the cost of David's treatment because David was his friend in addition to being his stepson. The trial court's conclusion that Bryant felt a moral duty to pay for David's treatment and that this moral duty met the requirements of a natural obligation (i.e. Bryant felt this duty was owed to David specifically; Bryant felt so strongly that he truly believed he owed a debt; the object of Bryant's performance, one-half of the cost of David's treatment for alcohol and drug addiction, has a pecuniary value; Bryant recognized his obligation by promising to perform (executing the promissory note); and fulfillment of Bryant's duty is not such that it would impair the public order) is reasonable, therefore not manifestly erroneous or clearly wrong.

FRAUD, ILL PRACTICES AND NONPERFORMANCE
Appellant also argues that if a moral obligation existed, the trial court erred in failing to find that this obligation was vitiated by the failure of Thomas to advise him that he had made other financial arrangements to pay for David's treatment.
Bryant asserts that his agreement to pay one-half of the cost of David's treatment was conditioned upon Thomas's agreement to do what he could to keep David from "running the roads" in his car, make him work or attend school and give him some responsibility. Because Thomas did not keep his end of the bargain, Bryant contends that his payment is excused.
Bryant testified that at the time he executed the note, he was unaware that Thomas had other potential sources from which he could obtain the money to pay for David's treatment. After David's release from the hospital, Bryant learned that Thomas bought a house from his father, which he then mortgaged to obtain money to satisfy the Charter Forest bill, consolidate all of his other bills and finance a two week vacation. Bryant testified that had he known that Thomas had already made these financial arrangements, he would not have executed the note.
Additionally, Bryant testified that the agreement he had with Thomas was that he would help pay the cost of David's treatment *382 if Thomas would do what he could to keep David from "running the roads" in his car, make him work or attend school and give him some responsibility. None of these conditions were set forth in the promissory note. Bryant testified that he and Thomas discussed the terms of their agreement on several occasions, including the day the note was executed. Bryant claims that after leaving the hospital, David went back to his old ways and Thomas made no attempt to encourage or force him to do otherwise. Therefore, Thomas did not meet his end of the bargain.
Bryant's ex-wife, Theresa Bryant, testified that Thomas told her and Bryant that he needed help paying for David's treatment. She does not recall a discussion of the conditions to be observed upon David's release from Charter Forest taking place contemporaneously with the execution of the note. Additionally, Theresa did not remember whether she and Bryant found out about Thomas's acquisition of the house from his father and subsequent mortgage before or after she and Bryant signed the promissory note.
Diane Thomas, plaintiff's wife, stated that there were no conditions placed on the note's execution. At the time, the main concern was doing what was best for David. Diane testified that her father-in-law offered to sell Thomas the house they were currently renting to give them collateral for a loan to pay for David's treatment. She does not know whether the Bryants were made aware of this arrangement before they signed the promissory note.
Plaintiff, Jerald Thomas, testified that it is possible that the conditions concerning what was expected of David upon the completion of his inpatient treatment were discussed before the Bryants executed the note. Thomas, however, emphatically stated that Bryant's execution of the note was not based upon these conditions.
Thomas also testified that his father offered the house to him as a means of obtaining money to help pay the Charter Forest bill prior to the time that Bryant signed the note. While he thinks he told Bryant about his father's offer before Bryant executed the note, he doesn't specifically remember doing so. The trial court rejected Bryant's fraud and ill practices defense and concluded that appellant's obligation was unconditional.
Bryant testified that he and Thomas agreed that Thomas would pay Charter Forest and that Bryant would reimburse him one-half of the cost of David's treatment. Thomas's failure to disclose his purchase of his father's house and its subsequent mortgage is not relevant to the finding that Bryant willingly and voluntarily executed the promissory note. There was no discussion between Bryant and Thomas about how Thomas was going to obtain the funds to pay Charter Forest for David's treatment.
Neither Mrs. Bryant nor Mrs. Thomas recalled that Bryant's agreement to bear one-half of the cost for David's treatment was conditioned upon Thomas taking an active and supervisory role in David's after-care plan. Both Mr. and Mrs. Thomas stated that the Bryants' execution of the note was not conditioned upon any such requirements. This was contradicted by Bryant. The trial court's findings must be afforded great deference. We cannot say that the trial court's findings are manifestly erroneous or clearly wrong.

CONCLUSION
For the reasons set forth above, the judgment of the trial court is affirmed. Costs are assessed to defendant-appellant, Myles Bryant.
VICTORY, J., concurs.
VICTORY, Judge, concurring.
I am not persuaded that Mr. Bryant was shown to have a natural obligation to help pay medical expenses for his stepson, David Thomas. However, he promised Mr. Thomas he would pay for half of the anticipated medical expenses by signing the note. Mr. Thomas reasonably relied on Bryant's written promise to his detriment by continuing David Thomas's treatment at Charter Forest Hospital. Thus, Bryant is liable on the note under La.Civ.Code article 1967 which reads in relevant part:

*383 A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying.
Except as stated herein, I agree with the majority opinion.