680 So.2d 1291 (1996)
Wanda LEBEAUX, Plaintiff-Appellant,
v.
NEWMAN FORD, INC., Defendant-Appellee.
No. 28609-CA.
Court of Appeal of Louisiana, Second Circuit.
September 25, 1996.
*1292 J. Michael Rhymes, Monroe, for Plaintiff-Appellant.
Sonny N. Stephens, Winnsboro, for Defendant-Appellee.
Before NORRIS, WILLIAMS and CARAWAY, JJ.
WILLIAMS, Judge.
Plaintiff, Wanda Lebeaux, appeals a trial court judgment rendered in favor of the defendant, Newman Ford, Inc., denying her recovery for sexual harassment by her former supervisor. For the reasons below, we affirm.

FACTS
At trial, Lebeaux and two other witnesses, Crystal Stewart and Linda Borden, testified in support of Lebeaux's claim of sexual harassment. Lebeaux stated that she began working as an accounts receivable clerk at Newman Ford in November of 1990. At the time of Lebeaux's hiring, her immediate supervisor was Linda Newman, daughter of the sole shareholder and owner of the company, *1293 Robert Newman. While under Ms. Newman's supervision, Lebeaux indicated that she performed her job duties without any problems and without having ever received a reprimand.
In November of 1991, Jim Payne was appointed general manager of the company and became Lebeaux's supervisor. Lebeaux testified that shortly thereafter Payne began harassing her. She claimed that he "made passes" at her, asked to come to her apartment for dinner, rubbed his body against her, pushed her into the ladies restroom while trying to embrace her, used vulgar language in her presence, and exposed himself to her. Lebeaux stated that Payne would wait until the two were alone before he displayed such conduct.
Lebeaux testified that she complained of Payne's behavior to Ms. Newman and that Ms. Newman also observed some of his inappropriate behavior. However, Lebeaux claimed that Ms. Newman would not take any action against Payne, but instead instructed her to work it out with him. Lebeaux stated that she did not complain to Mr. Newman because Payne threatened to fire her if she took such action.
After Payne allegedly exposed himself to her, Lebeaux notified personnel at the Richland Parish Sheriff's Office, but did not file a formal complaint. She testified that Payne then changed his behavior by becoming extremely hostile toward her. Lebeaux claimed that Payne would continuously reprimand her and use abusive language. She stated that Payne's conduct made it increasingly difficult for her to perform her job duties.
Lebeaux testified that upon her arrival at work on Monday morning, August 3, 1992, Ms. Newman asked to see her in Mr. Newman's office. According to Lebeaux, Ms. Newman claimed that Lebeaux was not carrying her work load and that her job performance was poor. Ms. Newman terminated Lebeaux's employment.
Crystal Stewart was an employee of Newman Ford from January 1992 until March 1993. According to Stewart, she shared the same office area with Lebeaux and Ms. Newman, and Payne would continuously curse and use vulgar language in their presence. She also stated that Payne would refer to his body parts, make comments about her body parts, and rub against her while she was talking on the telephone. Stewart also testified that she overheard Payne yell and curse at Lebeaux. Stewart indicated that although she informed Ms. Newman of Payne's conduct, Ms. Newman did not take any action. Stewart also testified that when Ms. Newman and Payne initially interviewed her in January of 1992 for a position at Newman Ford, they indicated their intention of replacing Lebeaux.
On cross-examination, Stewart admitted that while Payne had made sexually suggestive comments to her, including indicating that he wanted to visit her home at night, she never saw him make sexual advances toward Lebeaux. Instead, Stewart indicated that she felt his conduct toward Lebeaux was more of a hostile nature. Stewart stated that Payne often told "dirty" jokes and that everyone else in the office also participated in telling these types of jokes. She further admitted that Lebeaux never complained to Ms. Newman about Payne's conduct in her presence.
Linda Borden, Lebeaux's sister, testified that during the time her sister was working at Newman Ford, Inc., she and Lebeaux would have telephone conversations about the difficulties she was having with a co-worker who was making advances towards her. Borden also stated that after Lebeaux was fired, she was often upset and would begin to cry when she talked about her employment at Newman Ford, Inc.
Newman Ford, Inc. presented the testimony of four witnesses: Linda Newman, Philip Odom, Jim Payne, and Robert Newman. Linda Newman testified that her father hired Jim Payne as general manager because Newman Ford, Inc. was having financial difficulties, and Payne was to remedy those problems. She indicated that shortly after Payne was hired, he began making changes that were resented by some of the employees, including Lebeaux. Ms. Newman stated that Lebeaux was often insubordinate with Payne and that he had to correct her on several *1294 occasions. Ms. Newman also testified that she and Payne were aware that Lebeaux instigated problems in other departments of the dealership. Ms. Newman testified that this factor and Lebeaux's inadequate job performance led to discussions between Ms. Newman and Payne about terminating Lebeaux's employment.
According to Ms. Newman, none of the employees, including Lebeaux or Stewart, ever complained about Payne sexually harassing them. In fact, Ms. Newman stated that she and Lebeaux would meet socially after work, and Lebeaux never mentioned any such conduct. She also stated that she never observed or heard Payne make any type of sexual advance toward Lebeaux. However, Ms. Newman admitted that Payne often used vulgar language when talking with employees. She also testified that everyone at the dealership told "off-color" jokes, including Payne, and that the joke telling would get "out of hand."
Phillip Odom, a finance manager hired by Newman Ford, Inc. shortly after Payne's arrival, testified that Payne warned him prior to accepting the job that Lebeaux had made sexual advances toward other employees. Odom testified that his office was next to the business office, and he neither observed Payne make any sexual advances toward a female employee nor make any physical contact with Lebeaux. Odom denied having discussions with Payne about the physical characteristics of any of the female employees. He also stated that Lebeaux, along with the other office employees, would tell jokes, but that Lebeaux never appeared offended. Odom stated that he observed hostility between Payne and Lebeaux and that Lebeaux would openly defy Payne.
Jim Payne testified that he and Lebeaux began having problems shortly after he became employed at Newman Ford, Inc. because of changes he made in the company's operation. He denied ever brushing up against Lebeaux's body, touching her intimately, or propositioning her for sexual intercourse. He stated that because his office had a glass door and a glass wall facing a heavy traffic area, such acts would not have been possible without someone observing them. Payne admitted, however, that he used abusive and profane language toward Lebeaux because he was "hot-headed" and "bull-headed." Payne testified that Lebeaux would respond with the same type of language and that much of this conflict stemmed from her job performance and the controversy she caused in other departments. Payne also admitted that he, Lebeaux, and some of the other employees, told "off-color" jokes. On cross-examination, Payne admitted that he had "probably" threatened to fire Lebeaux and that he used vulgar language when Mr. Newman was away from the business.
Robert Newman testified that he was present at the dealership on a regular basis and met with his female employees monthly to discuss any complaints or problems they may have had. Mr. Newman also testified that he maintained an "open door" policy for employees to privately discuss any complaints or problems with him. He stated that neither Lebeaux nor Stewart took advantage of these opportunities to complain of Payne's conduct. Instead, he testified that he was unaware of any allegations of sexual harassment by Payne until approximately two or three weeks after Lebeaux was fired. Mr. Newman also testified that he and Payne had discussed Lebeaux's inadequate work performance on several occasions. Finally, he testified that he did not tolerate the use of vulgar language at his business.
On cross-examination, Mr. Newman admitted that he did not know if Lebeaux ever received a copy of the sexual harassment policy for Newman Ford, Inc. He also admitted that Lebeaux may have complained of Payne's use of strong language and that he had heard Payne raise his voice while talking with Lebeaux.

DISCUSSION
Lebeaux assigns four points of error in her brief: (1) the trial court erred in determining that she was not subjected to unwelcome sexual harassment; (2) the trial court erred in requiring a burden of proof in excess of "more probable than not"; (3) the trial court erred in determining that Newman Ford, Inc. was not vicariously liable for the acts of *1295 its general manager, Jim Payne; and (4) the trial court erred in requiring the plaintiff in a sexual harassment case to be pristine and pure.
Louisiana's anti-discrimination law, LSA-R.S. 23:1006, is similar in scope to the federal statute prohibiting sexual discrimination found in Title VII of the Civil Rights Act of 1964, as amended. See 42 U.S.C. § 2000e, et seq. Thus, Louisiana courts have routinely looked to judicial interpretations of the federal statutes for guidance in determining whether a valid claim of sexual harassment has been asserted. Spears v. Rountree Oldsmobile-Cadillac Company, 26,810 (La. App.2d Cir. 4/5/95), 653 So.2d 182; Brown v. Vaughn, 589 So.2d 63 (La.App. 1st Cir. 1991); Polk v. Pollard, 539 So.2d 675 (La. App. 3rd Cir.1989); Bennett v. Corroon and Black Corp., 517 So.2d 1245 (La.App. 4th Cir.1987), writ denied, 520 So.2d 425 (La. 1988). Here, Lebeaux bases her claim for relief on both the federal and state statutes.
We recognize two types of sexual harassment: "quid pro quo" and "hostile working environment." "Quid pro quo" harassment exists when an employer places unwanted terms or conditions on employment, benefits or other employment advantages in exchange for sexual favors. A "hostile environment" is harassment that does not affect the recipient's economic benefits, but instead creates a hostile or offensive working environment. Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); Alphonse v. Omni Hotels Management Corporation, 94,0157 (La.App. 4th Cir. 9/29/94), 643 So.2d 836.
In the instant case, the record indicates that Lebeaux's claim for sexual harassment is based on Payne's creation of a hostile working environment. As stated by the trial court judge in his written reasons for judgment, Lebeaux was required to prove that:
(1) she belonged to a protected group;
(2) that she was subjected to unwelcome sexual harassment;
(3) the harassment was based on gender;
(4) the harassment affected a term, condition, or privilege of employment; and
(5) the defendant employer knew or should have known of the harassment and failed to take proper remedial action.
Collins v. Baptist Memorial Geriatric Center, 937 F.2d 190 (5th Cir.1991), cert. denied, 502 U.S. 1072, 112 S.Ct. 968, 117 L.Ed.2d 133 (1992); Jones v. Flagship Intern., 793 F.2d 714 (5th Cir.1986), cert denied, 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987); Spears v. Rountree Oldsmobile-Cadillac Company, supra; Alphonse v. Omni Hotels Management Corporation, supra.
The trial court found that Lebeaux failed to meet the second and fifth prongs of the above-cited criteria. Because we conclude that the trial court did not commit manifest error in finding that Lebeaux failed to prove that she was subjected to unwelcome sexual harassment, we need not reach the issue of respondeat superior outlined in requirement number five. Further, we conclude that the correct burden of proof was applied in this case.
An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless the finding is clearly wrong. Stobart v. State of Louisiana, Through the Department of Transportation and Development, 617 So.2d 880 (La.1993); Thomas v. Bryant, 25, 855 (La.App.2d Cir. 6/22/94), 639 So.2d 378; Cupp v. Banks, 25,762 (La.App.2d Cir. 5/4/94), 637 So.2d 678; Luman v. Highlands Insurance Company, 25,445 (La.App.2d Cir. 2/23/94), 632 So.2d 910. The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Stobart v. State of Louisiana, Through the Department of Transportation and Development, supra; Thomas v. Bryant, supra.
Where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State of Louisiana, Through the Department of Transportation and Development, supra; Thomas v. Bryant, supra. When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong *1296 standard demands great deference to the findings of the trier of fact. Thomas v. Bryant, supra. Credibility determinations are the function and prerogative of the trial court. Thomas v. Bryant, supra.
After a review of the entire appellate record, we conclude that the trial court was presented with two permissible views concerning whether Payne subjected Lebeaux to unwelcome sexual harassment. In his reasons for judgment, the trial judge opined that Lebeaux failed to prove by a preponderance of the evidence that she was sexually harassed. While Lebeaux testified that Payne rubbed his body against her, "made passes" at her, and exposed himself to her, Payne denied these allegations, and none of the other witnesses corroborated Lebeaux's testimony. Based on the evidence in the record, we cannot say the trial court was manifestly wrong in deciding that Lebeaux had not proved her allegations of unwelcome sexual advances.
Since the trial court decided that the allegations of unwelcome physical and verbal sexual advances were not proven by a preponderance of the evidence, the only remaining possibility of unwelcome sexual harassment was Payne's use of profanity and his "off-color" jokes. The trial court found that all of the parties involved, including Lebeaux, had told "off-color" jokes and used profanity. While the trial court recognized that an actual conflict existed between Lebeaux and Payne, he concluded that the conflict resulted from Lebeaux's resistance to changes in the company's operation and not from Lebeaux's resistance to Payne's alleged sexual advances. The trial judge stated that he was "particularly impressed" by the testimony of the defense witnesses. It is apparent that the trial court made credibility evaluations in favor of the defense witnesses and against Lebeaux and her witnesses. We find no abuse of discretion in this determination.
Finally, we note that the trial court specifically stated that Lebeaux must prove the five elements of her claim of sexual harassment by a preponderance of the evidence, the correct burden of proof in a civil action. See Estate of Willis v. Cairns, 630 So.2d 805 (La.App. 3rd Cir.1993). There is nothing in this record to suggest that a more stringent burden of proof was employed, or that the trial court required Lebeaux to be "pristine and pure."

CONCLUSION
For the foregoing reasons, we conclude that the trial court was not clearly wrong in finding that appellant had failed to prove that she was subjected to unwelcome sexual harassment. We further conclude that the trial court utilized the correct burden of proof in reaching its conclusions. Accordingly, the trial court's judgment is affirmed at appellant's costs.
AFFIRMED.