706 So.2d 213 (1998)
Wayne and Barbara O'RILEY, Plaintiffs-Appellees,
v.
CITY OF SHREVEPORT, Defendant-Appellant.
No. 30107-CA.
Court of Appeal of Louisiana, Second Circuit.
January 23, 1998.
Rehearing Denied February 17, 1998.
*215 Zelda W. Tucker, Assistant City Attorney, Shreveport, for Defendant-Appellant.
Mark W. Odom, Shreveport, for Plaintiffs-Appellees.
Before BROWN, STEWART and GASKINS, JJ.
STEWART, Judge.
In this tort case, the defendant, the City of Shreveport, appeals the trial court judgement in favor of the plaintiffs, Wayne O'Riley and Barbara O'Riley, finding the City of Shreveport liable for negligence and 100% at fault, and awarding Mr. O'Riley general damages, past medical expenses, future medical expenses, future prescription medications, costs for yard and pool services and awarding Mrs. O'Riley damages for loss of consortium. We reverse in part, affirm in part, amend and render.

FACTS
Mr. Wayne O'Riley called the Department of Public Works of the City of Shreveport *216 complaining of sink holes in the backyard of his home at 718 Booth Drive, located in the North Highlands area of Shreveport. On Friday, May 17, 1991 a crew from the Department of Public Works traveled to Mr. O'Riley's home to investigate the problem. It was thought that an underground pipe may have been the cause of the holes. The city employees probed and proceeded to dig further down through one of the existing holes in Mr. O'Riley's backyard in an unsuccessful effort to locate and repair the drainage pipe. Mr. O'Riley stood in the backyard and observed the city employees digging the hole. Mr. and Mrs. O'Riley subsequently left home to play golf. The city employees dug a hole in the lower flat part of the backyard in an effort to locate the drainage pipe. Mr. O'Riley did not return until that evening, at which time the city employees had left his backyard.
On Saturday, May 18, 1991, Mr. Wayne O'Riley and his wife, Barbara O'Riley, went into the backyard to measure the length of the underground pipe in the event the City of Shreveport would deny responsibility and he would be required to repair the pipe. Mr. O'Riley took one end of a tape measure and his wife held the other end. Mr. O'Riley walked backwards. He never looked back while walking backwards, because he was looking at the tape measure and his wife. Mr. Wayne O'Riley stepped in a hole, fell backwards and landed on his derriere, injuring his back.
Mr. O'Riley had a preexisting injury to his lumbar spine and had undergone a lumbar fusion in 1945. After his fall, Mr. O'Riley was treated and released from the Veterans Administration Medical Center.
A bench trial was held in this matter before the Honorable Leon L. Emanuel, III on August 13 th and 14 th, 1997. The trial court found the City of Shreveport 100% at fault and awarded Mr. O'Riley $122,000.00 in general damages, $1,652.07 for past medical expenses, $25,000.00 for future medical expenses, $1,664.40 for future prescription medications and $540.00 for yard and pool services. In addition, Mrs. O'Riley was awarded $28,000.00 for loss of consortium.

APPORTIONMENT OF FAULT
An appellate court may not set aside a trial court's findings of fact in the absence of manifest error or unless the finding is clearly wrong. Lewis v. State, Through DOTD, 94-2370 (La.4/21/95), 654 So.2d 311; Stobart v. State, Through DOTD, 617 So.2d 880 (La. 1993); Lebeaux v. Newman Ford, Inc.,28,609 (La.App. 2 Cir. 9/25/96), 680 So.2d 1291. The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Lewis v. State, Through DOTD, supra; Stobart v. State, Through DOTD, supra; Lebeaux v. Newman Ford, Inc., supra.
In apportioning fault, the trial court must consider "both the nature of the conduct of each party at fault and the extent of the causal relationship between the conduct and the damages claimed." Theriot v. Lasseigne, 624 So.2d 1267, 1275 (La.App. 3 Cir. 1993); Watson v. State Farm Fire and Casualty Insurance Company, 469 So.2d 967 (La. 1985).
A trial court's findings regarding percentages of fault are factual and will not be disturbed on appeal unless clearly wrong. Socorro v. City of New Orleans, 579 So.2d 931 (La.1991); Baughman v. State, DOTD, 28,369 (La.App. 2 Cir. 5/8/96), 674 So.2d 1063. The Louisiana Supreme Court stated that "In reviewing determinations of proportionate fault, we have previously compared the respective degrees of duty of the various parties and degree of causation in the parties' breach of their respective duties." Socorro v. City of New Orleans, supra at 942.
In assignment of error number one, the defendant argues that the trial court erred in apportioning 100% fault to the City of Shreveport and by failing to assess any degree of fault to the plaintiff, Wayne O'Riley. The City of Shreveport contends that Mr. O'Riley was solely at fault in causing the accident and that Mr. O'Riley's recovery must be reduced by the percentage of fault attributable to his actions. The City of Shreveport argues that Mr. O'Riley failed to look over the yard before walking backwards with the measuring tape.
*217 It is well settled that the allocation of comparative fault is a factual matter lying within the discretion of the trial court, and such determination will not be disturbed on appeal in the absence of manifest error. Rosell v. ESCO, 549 So.2d 840 (La.1989). When there is evidence before the trier of fact which, upon its evaluation of credibility furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. In other words, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell supra; Canter v. Koehring, 283 So.2d 716 (La.1973).
In the instant case, the trial court found that the plaintiff's injuries were caused by falling in a hole dug by the City of Shreveport, that the hole was not properly filled, marked or barricaded such that it was not dangerous, that "the hole was not so big that Mr. O'Riley should have seen it, had to have seen it or it was reasonable for him to have seen it before he fell in it given the circumstances." The trial court evaluated all of the testimony and evidence and found that Mr. O'Riley had shown by a preponderance of the evidence that his injuries were caused when he fell into a hole in his backyard dug by the City of Shreveport. The trial court apportioned 100% of the fault to the City of Shreveport. After reviewing the record, we find that the trial court was clearly wrong in failing to allocate fault to the plaintiff.
In allocating fault between the parties involved, the court is to consider several factors, as set out in Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La. 1985). In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Watson, supra, at 974.
The application of the Watson factors require a reapportionment of the parties fault and suggest that a lesser degree of fault be attributed to the defendant. Our consideration of these factors suggests that the fault of the parties is substantially equal. The City of Shreveport employees knew that the hole they dug was not properly filled, marked or barricaded such that it was not dangerous and failed to warn the plaintiff of a known danger. However, under the circumstances, Mr. O'Riley knew or should have been aware of the possible presence of holes or depressions to some degree. Mr. O'Riley testified that the City was unsuccessful in locating the drain pipe with the first hole dug and that he heard Mr. Young, a city employee, say "let's go dig someplace else". Although the City of Shreveport's failure to properly fill, mark or barricade the hole was a cause of the harm to the plaintiff, the plaintiff's failure to observe the ground where he was stepping had a more direct relationship to the harm he suffered. Mr. O'Riley was acutely aware of the City of Shreveport digging holes in his backyard.
Furthermore, Mr. O'Riley breached his duty to ascertain the safety of his walk through the yard where he knew of the excavation activities and failed to exercise ordinary care by walking backwards through the yard under the existing circumstances. Mr. O'Riley was at fault in failing to look back to see where he was stepping and in not using reasonable care for his own safety.
After weighing the Watson factors, we apportion fault at 50% to the City of Shreveport and 50% to the plaintiff, Mr. O'Riley.

DAMAGE TO PLAINTIFF'S PREEXISTING BACK CONDITION
In assignment of error number two, the defendant contends that the trial court erred in finding that the accident caused an aggravation *218 to plaintiff's preexisting back condition. The City of Shreveport argues that Mr. O'Riley failed to establish that the crack in his preexisting fusion mass or that the spondylolisthesis was caused by this accident.
It is well settled that the plaintiff has the burden of proving by a preponderance of the evidence damages caused by defendant's fault. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971); Coleman v. Victor, 326 So.2d 344 (La.1976). The law recognizes that a medical condition producing disability is presumed to have resulted from an accident if before the accident the injured person was in good health but shortly after the accident the disability-causing condition manifested itself, provided there is a reasonable possibility of a causal connection between the accident and the condition. Sanders v. State Farm Mut. Auto. Ins. Co., 516 So.2d 1162, 1166-1167 (La.App. 2 Cir.1987). In order for such a legal presumption to apply, the plaintiff must prove, inter alia, that there is a reasonable possibility of a causal nexus. Heath v. Northgate Mall, Inc., 398 So.2d 132 (La.App. 3d Cir.1981); Boykin v. Washington, 401 So.2d 488 (La.App. 2d Cir.1981). The plaintiff must show proof by a reasonable preponderance of the evidence of such a causal nexus. Taylor v. Mitcham, 499 So.2d 173 (La.App. 2d Cir.1986).
In order to defeat the presumption, defendant must show some other particular incident could have caused the injury in question. Davis v. Galilee Baptist Church, 486 So.2d 1021 (La.App. 2d Cir.1986).
The test for determining a causal relationship between an accident and subsequent injury is whether the plaintiff has proved through medical and lay testimony that it was more probable than not the injury was caused by the accident. Crawford v. City of Shreveport, 27,729 (La.App. 2d Cir. 12/6/95), 665 So.2d 680, 681; Mart v. Hill, 505 So.2d 1120, 1128 (La.1987). See Orgeron v. Prescott, 93-926 (La.App. 5th Cir. 4/14/94), 636 So.2d 1033, 1040. A defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. When the defendant's negligent action aggravates a preexisting condition, he must compensate the victim for the full extent of the aggravation. Nejame v. Hamiter, 614 So.2d 848, 852 (La.App. 2d Cir.1993).
At trial, Mr. O'Riley testified that prior to the accident he lived a normal life which included maintaining his one acre yard and playing golf regularly with his wife and friends. Although Mr. O'Riley had undergone a lumbar fusion in December 1945, he testified that he could do anything he wanted as far as his work around the house, as long as he didn't hold a full time job. His wife, Barbara O'Riley, corroborated his testimony. Mrs. O'Riley testified that before the accident Mr. O'Riley remodeled their home, took care of all of the yard work, serviced the pool, played golf regularly and had an active social life. She testified that Mr. O'Riley acted and looked young for his age, that he could do anything, stretch, play golf, walk around the mall, go out dancing, work on the car and work in the yard. Mr. O'Riley testified that his back pain was managed with pain medications prior to the accident. No evidence was introduced to negate Mr. and Mrs. O'Riley's testimony regarding his good health prior to the accident.
Mrs. O'Riley further testified that immediately after the fall Mr. O'Riley was sore and required assistance to get up, walk into the house and sit in a recliner. She testified that he complained of pain and did not sleep well that Saturday night. Mr. O'Riley testified that he had pain in his shoulders, back and in both legs. On Sunday, she took Mr. O'Riley to Veterans Hospital where pain medication was prescribed and he was told to return on Monday for X-rays.
Further, Mr. Charles Pasquier, physician assistant in the internal medicine department at the VA Medical Center, testified that he found Mr. O'Riley's subjective verbal indications to be consistent with his physical examination and that the various steroid, pain, and anti-inflammatory medications prescribed did not provide Mr. O'Riley total relief.
The plaintiff's expert, Dr. Edward Anglin, orthopedic surgeon, testified regarding his *219 examination of Mr. O'Riley, his review of the x-rays, the orthopedic clinic reports and radiology reports. Dr. Anglin testified that Mr. O'Riley's x-rays of 7/11/88 showed a post or fusion mass of his lumbar spine with no evidence of spondylolisthesis, and fairly normal alignment with some decreased disk space between L5 and the sacrum, that the 5/20/91 x-rays showed a grade 1 spondylolisthesis of L5 and the x-rays on 10/20/95 showed a grade 1 spondylolisthesis of L5 and the sacrum with a post or fusion mass, with a radiolucency through the fusion mass at the level of L4 and 5.
Dr. Anglin further testified that "if he were going to have a degenerative spondylolisthesis, he's had a fusion since '45, it seems like that if it were going to be a degenerative spondylolisthesis that would have occurred over a period of time, that it would have surfaced sometime prior to 30 years down the line." Dr. Anglin responded affirmatively when asked whether spondylolisthesis of this type would typically result from some sort of trauma. He further testified that, it was more probable than not that a fall on that area could have aggravated or more likely aggravated the fusion mass.
We find that the plaintiff has sufficiently demonstrated that his injuries, spondylolisthesis and defect or fracture of the fusion mass, were caused by the accident in question. The record shows that Mr. O'Riley had no signs of spondylolisthesis but after the fall there is spondylolisthesis and a defect or fracture of the fusion mass that allowed some slippage of the vertebra L5 on the sacrum. The facts and the testimony of the plaintiff's witnesses, Charles Dyer and Bella Williams, support Mr. and Mrs. O'Riley's assertion that Mr. O'Riley had never experienced this type of pain, symptoms, and limitations in range of motion prior to the accident, which indicate the impact of the accident on his back.
Additionally, even though the record clearly shows that Mr. O'Riley had previous back surgery and a fusion of his back in '45, we accept the testimony of Dr. Anglin that the accident aggravated the condition and that there is a reasonable possibility of a causal connection between the accident and the aggravation of the preexisting back condition.
The City of Shreveport takes Mr. O'Riley as it finds him and is responsible for the natural and probable consequences of the City's negligence. The spondylolisthesis and a defect or fracture of the fusion mass can certainly be said to have been proximately caused by the accident. Thus, we conclude that the evidence and testimony demonstrate a reasonable factual basis for the trial court's finding of causation.
Assignment of error number two is without merit.

GENERAL DAMAGE AWARD
In assignment of error number three, the City of Shreveport contends that the trial court erred in awarding Mr. O'Riley $122,000.00 in general damages and that the trial court abuse its discretion by making such an excessive award. The City of Shreveport cites cases which the City argues are similar and result in more appropriate damage awards ranging from $20,000 to $50,000.
The appropriate procedure for testing whether the trial court abused its discretion by making an excessive or inadequate award is to determine whether the award can be supported under the interpretation of the evidence most favorable to the plaintiff which reasonably could have been made by the fact finder. Kessler v. Southmark Corp., 25,941 (La.App.2d 9/21/94), 643 So.2d 345. The plaintiff asserts that the evidence supports the award in this case, as Mr. O'Riley showed no signs of spondylolisthesis before the accident; the accident had a negative impact on plaintiff's quality of life; and Mr. O'Riley will have to live with pain for the rest of his life. Therefore, the award of $122,000.00 was reasonable and should not be disturbed.
In Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), the court held that the role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Each case is different, and the adequacy of the award should be determined by the facts or circumstances *220 particular to the case under consideration. An appellate court should rarely disturb an award of general damages since discretion vested in trier of fact is "great". The standard for review is nonspecific, and only when the award, in either direction, is beyond that which a reasonable trier of fact could assess for effects of a particular injury to a particular plaintiff under particular circumstances should an appellate court increase or reduce award. Youn, 623 So.2d at 1261; Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
It is only after analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered excessive or insufficient. Reck v. Stevens, 373 So.2d 498 (La.1979). After a determination of abuse has been made, the appellate court can disturb the award, but "only to the extent of lowering it (or raising it) to the highest (or lowest) amount which is reasonably within the discretion afforded that court." It is never appropriate for a Court of Appeal, having found that the trial court has abused its discretion, simply to decide what it considers an appropriate award on the basis of the evidence. Coco v. Winston Industries, Inc., supra at 335.
Viewing the evidence in the light most favorable to the plaintiff and considering the severity, nature, the effect it had on the plaintiff and the duration of the injury, as well as the prognosis for recovery, we find that the trial court did abuse its discretion in awarding $122,000.00.
"Only after such determination of abuse has been reached, is a resort to prior awards appropriate under Coco for purposes of then determining what would be an appropriate award for the present case." Reck v. Stevens, 373 So.2d 498, 501 (La.1979). While we recognize that each award of damages must be decided on its own facts and that no two cases are exactly alike, "an examination of prior awards has a limited function if indeed the facts and circumstances of the prior awards are closely similar to the present. The prior awards may serve as an aid in this determination only where, on an articulated basis, the present award is shown to be greatly disproportionate to past awards (not selected past awards, but the mass of them) for (truly) "similar" injuries." Reck v. Stevens, supra. See Coco supra at 334.
The day after the accident, May 19, 1991, Mr. O'Riley was taken to the emergency room at the Veterans Administration Medical Center where he was treated and released. Mr. O'Riley was instructed to return on Monday for x-rays. The medical records of the Veterans Medical Center reveal that Mr. O'Riley had no signs of spondylolisthesis but after the fall there is spondylolisthesis and a defect or fracture of the fusion mass that allowed some slippage of the vertebra L5 on the sacrum, which exacerbated pain he already endured as a result of the prior spinal fusion. Conservative treatment was recommended with no recommendation for future surgery.
Since the accident, Mr. O'Riley experiences acute and chronic pain and stiffness in his lower back, accompanied by muscle spasms in his shoulders and legs. Mr. O'Riley testified that he is unable to bend, stoop and twist like he did before the accident. Mr. O'Riley has difficulty dressing, requires assistance with his personal hygiene, has difficulty sleeping due to the pain, is unable to perform sexually and rarely leaves the house because of the embarrassment of his back brace. He has been treated for depression and anxiety.
Mr. O'Riley was 67 years old at the time of his accident in 1991. He had a spinal fusion 46 years prior to the accident. In 1945, the Veterans Administration classed Mr. O'Riley at 40 percent functional disability and employability. His condition progressed to 60 percent disability with a 100 percent unemployability in 1980. General damage awards for pain and suffering and permanent disability for plaintiffs with a preexisting injury who have sustained permanent injury of varying degrees and received treatment similar to that of Mr. O'Riley have ranged from $20,000 to $50,000.
It is our opinion, based upon the facts and circumstances peculiar to this case, as well as a review of the judgments rendered by us and our brethren of the other Courts of *221 Appeal, that substantial justice will be done if the award is lowered. Therefore the general damages awarded by the trial court for disability and mental and physical pain and suffering will be reduced to $50,000, which is the highest amount which could have been awarded without an abuse of discretion.

FUTURE MEDICAL EXPENSES AWARD
In assignment of error number four, the defendant contends that the trial court erred in awarding Mr. O'Riley $25,000.00 in future medical expenses and in awarding $1,664.00 in future prescription costs.
In order to recover future medical expenses, the appellate record must establish that future medical expenses will be necessary and inevitable. Stiles v. K Mart 597 So.2d 1012, 1013 (La.1992). It is well settled that future medical expenses, like any other element of damages, must be established with some degree of certainty. See Sikes v. McLean Trucking Co., 383 So.2d 111 (La.App. 3rd Cir.1980). Also, "... awards will not be made for future medical expenses which may or may not occur in the absence of medical testimony that they are indicated and setting out their probable cost." Veazey v. State Farm Mut. Auto Ins., 587 So.2d 5 (La.App. 3rd Cir.1991); Holliday v. United Services Auto. Ass'n, 569 So.2d 143, 146 (La. App. 1st Cir.1990).
There is no testimony or other evidence that recommends future surgery or establishes that future surgery is medically necessary because of the spondylolisthesis or the fracture of the post-lumbar fusion mass. Although Dr. Anglin testified that the probable cost associated with a refusion is approximately $10,000 to $20,000, he did not recommend future surgery. Dr. Anglin further testified that the age, condition, history and other medical problems of Mr. O'Riley makes him more of a risk for refusion surgery. The recommendation of Dr. Anglin is "more conservative treatment of exercises, muscle relaxants, anti-inflammatory medicines and pain medicines". Further, Mr. O'Riley testified that he understood from physicians at the VA Hospital that he was not a good candidate for surgery or any sort of corrective procedure because of his age and "one doctor says we don't think you can tolerate more surgery."
For these reasons, we find the trial court abused its discretion in awarding $25,000.00 for future medical expenses. The record failed to establish that future medical expenses will be necessary and inevitable. Therefore, the judgment is amended to delete the award for future medical expenses.
With regards to the $1,664.40 award for future prescription costs, "[f]uture medical expenses should not be denied because it is impossible to establish the nature and extent of the treatment that will be required or the exact cost of it." Higginbotham v. Ouachita Parish Police Jury, 513 So.2d 537, 542 (La.App. 2 Cir. 1987); Wilson v. Wal-Mart Stores, Inc., 448 So.2d 829 (La.App. 2d Cir.1984); Cushman v. Fireman's Fund Insurance Company, 401 So.2d 477, 481(La.App. 2 Cir.1981).
In Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971), our Supreme Court recognized a plaintiff's right to recover medical expenses though the extent and cost of them could not be established with certainty. The testimony and evidence at trial clearly established that Mr. O'Riley would be in need of future prescription medications for future conservative treatment of his back condition. Dr. Anglin testified that he would not recommend surgery for the plaintiff's Grade I Spondylolisthesis but recommends a more conservative treatment of muscle relaxants, anti-inflammatory medicines and pain medicines.
The appellate record establishes that future prescription medication expenses will be necessary and inevitable. Since there is a legal right to recovery, although the damages cannot be exactly calculated, an award of $1,664.40 for this loss is appropriate under the circumstances including the plaintiff's life expectancy. We find no abuse in the trial judge's much discretion in determining the award for the cost of future prescription medications which the plaintiff will require in the future.
This assignment of error is without merit.

*222 LOSS OF CONSORTIUM AWARD
In assignment of error number five, the defendant contends that the trial court erred in awarding the plaintiff, Barbara O'Riley $28,000.00 for her loss of consortium claim. The defendant further contends that the plaintiff, Barbara O'Riley failed to establish any compensable loss of consortium and she should not be entitled to any award.
The elements of a spouse's loss of consortium claim include loss of love and affection; loss of companionship, impairment of sexual relations; loss of material services; loss of support; loss of aid and assistance, and loss of felicity. Finley v. Bass, 478 So.2d 608, 614 (La.App. 2d Cir.1985).
Comparing the seven factors articulated in Finley, the evidence shows:
1. Loss of love and affection. Mrs. O'Riley testified that Mr. O'Riley is frustrated, angers easily and has suggested that Mrs. O'Riley get rid of him and find "a whole man."
2. Society and companionship. Mrs. O'Riley testified that before the accident Mr. O'Riley remodeled their home, took care of all of the yard work, played golf regularly, had an active social life and acted and looked young for his age. Since the accident Mr. O'Riley is limited and can no longer, stretch, play golf, walk around the mall, go out dancing, work on the car or work in the yard.
3. Sexual relations. While Mrs. O'Riley testified that she and plaintiff had an active sex life prior to the accident, she further stated that they have not had intercourse in four years because it is painful for Mr. O'Riley. Mr. O'Riley testified that he is able to obtain an erection but cannot maintain it because the pain is too great.
4. Right of performance of material services. The O'Rileys' moved to a smaller home that requires less upkeep and maintenance as Mr. O'Riley is limited and can no longer assist with household chores, upkeep of the yard and they can no longer afford to pay anyone to perform these services.
5. Right of support (financial). There is no loss because the plaintiff was unemployed prior to the accident.
6. Aid and assistance. Mrs. O'Riley assists Mr. O'Riley with dressing and his personal hygiene. Mrs. O'Riley has to drive Mr. O'Riley wherever they go. Mr. O'Riley testified that Mrs. O'Riley now takes complete care of him acting in a nursing capacity, providing massages twice daily, applying ice packs and heating pads to help easy the pain.
7. Loss of felicity. It is obvious that Mrs. O'Riley is not as happy as she was prior to the accident as Mr. O'Riley is no longer socially active and suffers from depression. Both Mr. and Mrs. O'Riley testified to the change in Mr. O'Riley's demeanor since the accident.
Unquestionably, many of the items enumerated in Finley have been proven in this case. Nevertheless, considering the injury sustained by the plaintiff, along with the facts that Mr. O'Riley was 67 years old at the time of his accident, that he had a spinal fusion 46 years prior to the accident, that he was classed at 60 percent disability with a 100 percent unemployability by the Veterans Administration, that when he entered his second marriage in 1983, Mrs. O'Riley knew of his disability classification by the Veterans Administration, help to support the reduction of loss of consortium. Therefore, we find the trial court's loss of consortium award to Mrs. O'Riley is so excessive as to constitute an abuse of discretion. The highest amount we could affirm under the facts and circumstances of this case is $15,000. Therefore, we reduce the award to $15,000. Further, the loss of consortium award is subject to reduction by the percentage of negligence attributed to Mr. O'Riley.

DECREE
For the foregoing reasons, judgment of the trial court is reversed in part, affirmed in part, and amended. Judgment is rendered as follows:
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, Wayne O'Riley, and against defendant, City of Shreveport, as to the following:

*223
Special Damages:
Past Medical Expenses:
 V.A. Medical Center $ 780.00
 Dr. Edward L. Anglin 750.00
 Prescription Drugs 13.87
 Medical Aids and Supplies 108.20
Yard & Pool Service 540.00
Future Prescription Medication 1,664.40
 _________
 TOTAL SPECIAL DAMAGES 3,856.47
 ==========
General Damages: $50,000.00
 ==========

together with legal interest thereon from the date of judicial demand until paid.
FURTHER, IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, Barbara O'Riley, and against defendant, City of Shreveport, for loss of consortium in the amount of Fifteen Thousand and NO/100 ($15,000), together with legal interest thereon from the date of judicial demand until paid.
FURTHER, IT IS ORDERED, ADJUDGED AND DECREED, that fault is apportioned 50% to the City of Shreveport and 50% to the plaintiff, Mr. Wayne O'Riley. The awards in favor of Mr. and Mrs. O'Riley are, of course, subject to reduction of 50 percent, representing the fault assigned to the plaintiff, Mr. Wayne O'Riley.
FURTHER, IT IS ORDERED, ADJUDGED AND DECREED that all court costs, trial and appellate are assessed equally between Wayne O'Riley and the City of Shreveport.
AFFIRMED IN PART, REVERSED IN PART, AND AMENDED; JUDGMENT RENDERED.

APPLICATION FOR REHEARING
Before MARVIN, C.J., and BROWN, WILLIAMS, STEWART and GASKINS, JJ.
Rehearing denied.