# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**13-1406**


ALVERDA ARDOIN DESHOTELS

VERSUS

SELDON JOSEPH DESHOTELS, SR.


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 10-C-6106-B
HONORABLE ELLIS J. DAIGLE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## MARC T. AMY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Marc T. Amy, and John E. Conery, Judges.


**REVERSED AND REMANDED.**

**Jack Derrick Miller**
**(A Professional Corporation)**
**Parker Reed Mitchell**
**Post Office Box 1650**
**Crowley, LA   70526**
**(337) 788-0768**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Alverda Ardoin Deshotels**

**Nicole B. Breaux, L.L.C.**
**Attorney at Law**
**415 N. Parkerson Avenue**
**Crowley, LA   70527-1650**
**(337) 783-0888**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Alverda Ardoin Deshotels**

**Ted Deshotels**
**128 Kristen Lane**
**Lafayette, LA   70508**
**IN PROPER PERSON**

**Mary Deshotels Courville**
**108 Kristen Lane**
**Lafayette, LA   70508**
**IN PROPER PERSON**

**Andre Deshotels**
**511 Leger Road**
**Palmetto, LA   71358**
**IN PROPER PERSON**

**Anne Deshotels**
**126 Spanish Trail**
**Bastrop, LA   78602**
**IN PROPER PERSON**

**Matthew R. Deshotels**
**8115 Settlers Circle**
**Baton Rouge, LA   70810**
**IN PROPER PERSON**

**Jamie Deshotels Pucheu**
**8041 Settlers Circle**
**Baton Rouge, LA   70810**
**IN PROPER PERSON**

**Kimberly Deshotels**
**2142 Marye Street**
**Alexandria, LA   71301**
**IN PROPER PERSON**

**Steve Deshotels**
**460 Ovey Benoit Road**
**Opelousas, LA   70570**
**IN PROPER PERSON**

**AMY, Judge.**

This matter arises from a dispute as to the validity of a matrimonial agreement which purported to establish a separate property regime during the parties' marriage. After a hearing, the trial court found that the purported agreement was not executed in either of the statutorily mandated forms, but that the wife's admission in court that she signed the purported agreement and knowledge of the purpose of the agreement were sufficient to create a natural obligation. Based on that finding, the trial court dismissed the petition for partition of community property. The wife appeals. For the following reasons, we reverse and remand.

## Factual and Procedural Background

The parties, Alverda Ardoin Deshotels and Seldon Joseph Deshotels, Sr.,[1] were married in 1986. Ms. Deshotels' petition for divorce was filed in December 2010. After the judgment of divorce was obtained, Ms. Deshotels filed a petition for partition of community property. However, pointing to a "marriage agreement" which had been filed in the St. Landry Parish records, Dr. Deshotels contended that no community property regime had ever existed. Ms. Deshotels argued that the purported matrimonial agreement was invalid due to irregularities in its execution. After a hearing, the trial court found that the purported matrimonial agreement was not properly executed as either an authentic act or as an act under private signature duly acknowledged. However, the trial court found that, because Ms. Deshotels admitted in court that she signed the document and had knowledge of the purpose of the agreement, the acknowledgment was the "missing performance necessary to

---

[1] The record indicates that Dr. Deshotels died on December 13, 2013, after the entry of judgment in this case. Ted Deshotels, Mary Deshotels Courville, Andre Deshotels, Anne Deshotels, Matthew R. Deshotels, Jamie Deshotels Pucheu, Kimberly Deshotels, and Steve Deshotels were appointed as Dr. Deshotels' successors.

complete the natural obligation" of the parties to be separate in their property and that the agreement was thus judicially enforceable.

Ms. Deshotels appeals, asserting that the trial court erred in giving effect to the purported matrimonial agreement.

## Discussion

Ms. Deshotels' assignment of error concerns the trial court's determination that, although the purported matrimonial agreement was not properly executed, that it was legally enforceable as a natural obligation.

*Matrimonial Agreements*

Pursuant to La.Civ.Code art. 2329,

> Spouses may enter into a matrimonial agreement before or during marriage as to all matters that are not prohibited by public policy.

> Spouses may enter into a matrimonial agreement that modifies or terminates a matrimonial regime during marriage only upon joint petition and a finding by the court that this serves their best interests and that they understand the governing principles and rules. They may, however, subject themselves to the legal regime by a matrimonial agreement at any time without court approval.

> During the first year after moving into and acquiring a domicile in this state, spouses may enter into a matrimonial agreement without court approval.

Further, La.Civ.Code art. 2331 prescribes the form of the matrimonial agreement, stating that "[a] matrimonial agreement may be executed by the spouses before or during marriage. It shall be made by authentic act or by an act under private signature duly acknowledged by the spouses."[2] The formalities of

---

[2] Louisiana Civil Code Article 1833(A) provides that:

> An authentic act is a writing executed before a notary public or other officer authorized to perform that function, in the presence of two witnesses, and signed by each party who executed it, by each witness, and by each notary public before whom it was executed. The typed or hand-printed name of each person

Articles 2329 and 2331 must be construed *stricti juris* because of the strong legislative policy against spouses giving up their community rights during marriage without judicial supervision. *Rush v. Rush*, 12-1502 (La.App. 1 Cir. 3/25/13), 115 So.3d 508, *writ denied*, 13-911 (La. 5/31/13), 118 So.3d 398.

Pursuant to La.Civ.Code art. 2331, it is permissible for spouses to execute a contract changing the legal regime from one of community property to one of separate property either before or after the marriage takes place. However, in order for the contract to be effective, it must have been executed in the manner specified in the articles. *See* La.Civ.Code art. 2329. Our review of the record reveals that the purported marriage agreement at issue herein is a pre-nuptial agreement. There is nothing in the record which would suggest that the Deshotels attempted to comply with the form and procedural requirements for post-nuptial agreements. When dealing with pre-nuptial agreements, where spouses fail to properly execute the prescribed form prior to their marriage any purported matrimonial agreement is unenforceable. *See Rush*, 115 So.3d 508; *Ritz v. Ritz*, 95-683 (La.App. 5 Cir.

---

shall be placed in a legible form immediately beneath the signature of each person signing the act.

Additionally, La.Civ.Code art. 1836 addresses acts under private signature duly acknowledged, providing that:

> An act under private signature is regarded prima facie as the true and genuine act of a party executing it when his signature has been acknowledged, and the act shall be admitted in evidence without further proof.

> An act under private signature may be acknowledged by a party to that act by recognizing the signature as his own before a court, or before a notary public, or other officer authorized to perform that function, in the presence of two witnesses. An act under private signature may be acknowledged also in any other manner authorized by law.

> Nevertheless, an act under private signature, though acknowledged, cannot substitute for an authentic act when the law prescribes such an act.

12/13/95), 666 So.2d 1181, *writ denied*, 96-131 (La. 3/8/96), 669 So.2d 395; *Lauga v. Lauga*, 537 So.2d 758 (La.App. 4 Cir. 1989).

Ms. Deshotels' uncontested testimony was that in March 1986, she, Dr. Deshotels, and two witnesses executed the marriage agreement at her place of business in Lake Charles. Ms. Deshotels testified that there was no notary present when the purported marriage agreement was executed. Further, Ms. Deshotels stated that she kept a copy of the agreement, a copy of which was submitted into evidence. A review of Ms. Deshotels' copy of the marriage agreement reveals that it is dated "this __ day of March, 1986;" that the date for the Deshotels' intended marriage is left blank; that the spaces for the names of the witnesses were left blank; and that the space for the notary's signature is left blank. One of the witnesses, Gloria Gossett, also testified that she signed the marriage agreement. According to Ms. Gossett's testimony, there were only four people present at the signing. Further, Ms. Gossett denied knowing the notary.

Dr. Deshotels submitted into evidence a copy of the marriage agreement which was recorded in the St. Landry Parish records. A review of that document reveals that it is similar in content to that submitted by Ms. Deshotels, but with several notable changes. The version of the marriage agreement is dated "this 30th day of May, 1986;" the date of the Deshotels' intended marriage is filled in as June 1, 1986; the names of the witnesses are inserted in the appropriate blanks; and the document is signed by a notary. The trial court reviewed the original contained in the St. Landry Parish clerk's files, and noted that there appeared to be white-out over the date area. Ms. Deshotels identified her signature on the copy filed with the St. Landry Parish clerk.

Pursuant to La.Civ.Code art. 2331, the pre-nuptial marriage agreement had to be "made by authentic act or by an act under private signature duly acknowledged by the spouses." Further, in order to satisfy the requirements of Article 2331, all of the elements of form must have been perfected before the marriage. *Rush*, 115 So.3d 508. According to the record, the parties stipulated that the purported marriage agreement was not an authentic act. Thus, the purported marriage agreement would only be effective if the requirements of an act under private signature duly acknowledged were met prior to the Deshotels' marriage. Our review of the record reveals no evidence that Ms. Deshotels acknowledged the purported marriage agreement prior to her marriage. Because the elements of form must have been perfected before the marriage, Ms. Deshotels' admission in court that she signed the marriage agreement cannot act to retroactively resurrect the defective marriage agreement.

Accordingly, we find no error in the trial court's conclusion that the purported matrimonial agreement was null and void because it was not executed in compliance with the specific formalities of La.Civ.Code art. 2329.

*Natural Obligations*

Although the trial court found that the purported matrimonial agreement was invalid for want of form, it determined that a natural obligation had been created due to Ms. Deshotels' admission in court that she signed the marriage agreement and that she signed it "knowing that she and [Dr. Deshotels] were agreeing to remain separate in their property."

Louisiana Civil Code Article 1760 states that "[a] natural obligation arises from circumstances in which the law implies a particular moral duty to render a performance." However, "[a] natural obligation is not enforceable by judicial

5

action. Nevertheless, whatever has been freely performed in compliance with a natural obligation may not be reclaimed." La.Civ.Code art. 1761. The Civil Code provides several examples of circumstances giving rise to a natural obligation, including "[w]hen a civil obligation has been extinguished by prescription or discharged in bankruptcy" and "[w]hen the universal successors are not bound by a civil obligation to execute the donations and other dispositions made by a deceased person that are null for want of form." La.Civ.Code art. 1762.

In order for a moral duty to become a natural obligation, five requirements must be met:

> (1) The moral duty must be felt towards a particular person, not all persons in general[;]
>
> (2) The person involved feels so strongly about the moral duty that he truly feels he owes a debt[;]
>
> (3) The duty can be fulfilled through rendering a performance whose object is of pecuniary value[;]
>
> (4) A recognition of the obligation by the obligor must occur, either by performing the obligation or by promising to perform. This recognition brings the natural obligation into existence and makes it a civil obligation[; and]
>
> 5) Fulfillment of the moral duty must not impair the public order.

*Thomas v. Bryant*, 25,855 (La.App. 2 Cir. 6/22/94), 639 So.2d 378, 380 (citing SAÚL LITVINOFF, THE LAW OF OBLIGATIONS § 2.4, 5 LOUISIANA CIVIL LAW TREATISE (2001)).

The determination of whether a natural obligation exists depends on the facts of each case. *State v. Placke*, 34,464 (La.App. 2 Cir. 5/9/01), 786 So.2d 889. The moral duty of the obligor is one that is "so strongly felt . . . that his conscience will not be appeased unless he renders to another a certain performance." *Id.* at 895

(quoting LITVINOFF, § 2.3). Further, the determination that a moral obligation constitutes a natural obligation is a finding of fact. *Azaretta v. Manalla*, 00-227 (La.App. 5 Cir. 7/25/00), 768 So.2d 179.

The standard of review for factual findings is well-established, as reiterated in *Thomas*, 639 So.2d at 381 (citations omitted):

> An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one.
>
> Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings. Credibility calls are the function and prerogative of the trial court.

Because the contract resulting from an obligor's promise to perform his natural obligation is onerous, the requirements of form for a valid donation are not required. LITVINOFF, § 2.23. However, "if the obligor intends to perform his natural obligation by making the kind of onerous contract for which a formality is exceptionally required, like the transfer of immoveable property, for example, the resulting onerous contract must be made in that form." *Id.* Our review of the record reveals nothing which would indicate that the form requirements of La.Civ.Code arts. 2329 and 2331, which are construed *stricti juris*, were complied with. *See Rush*, 115 So.3d 508.

Furthermore, the record does not support a finding that Ms. Deshotels clearly intended to be bound by the purported marriage agreement. Ms. Deshotels' uncontested testimony was that she thought she was signing "a contract which you keep your property that you own and I keep my property . . . But I did not

7

understand the fact that whatever he and I acquired, I did not understand that part." Ms. Deshotels also testified that her understanding of "separate" applied to the property that each party had before the marriage and the property they obtained after they got married would be community property. There was no testimony concerning whether Ms. Deshotels felt she had a moral obligation to fulfill the purported matrimonial agreement. Neither was there testimony concerning whether Ms. Deshotels had performed or promised to perform any obligation pursuant to the agreement. Absent a clear indication of intent to be bound, Ms. Deshotels' testimony that she signed the agreement is insufficient to bind her. *See* LITVINOFF, § 2.23 ("It is however necessary that the debtor's words clearly evince an intention to bind himself. If he simply recognizes that a natural obligation exists without expressing an intent to bind himself to perform it he is not then civilly bound.").

Accordingly, we find that the record does not support the trial court's findings concerning whether Ms. Deshotels' in-court admission that she signed the purported matrimonial agreement created a natural obligation. Thus, we reverse the trial court's judgment signed on September 27, 2013, dismissing Ms. Deshotels' petition for partition of community property and remand for further proceedings.

## DECREE

For the foregoing reasons, the judgment of the trial court signed on September 27, 2013, is reversed and this matter is remanded for further proceedings. Costs of this appeal are assessed to the appellees.

**REVERSED AND REMANDED.**