## NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2020 CW 0849R

TAMI JERRIE TURNLEY

VERSUS

JOSEPH CHAD TURNLEY

Judgment Rendered: DEC 3 0 2021

Appealed from the
Family Court
In and for the Parish of East Baton Rouge, Louisiana
Docket Number F209536

Honorable Pamela J. Baker, Judge Presiding

*************

| | |
|---|---|
| Lisa L. Boudreaux<br>Baton Rouge, LA | Counsel for Plaintiff/Appellee,<br>Tami Jerrie Turnley |
| Brian J. Prendergast<br>Baton Rouge, LA<br>and<br>David M. Prados<br>New Orleans, LA | Counsel for Defendant/Appellant,<br>Joseph Chad Turnley |

BEFORE: WHIPPLE, C.J., WELCH, AND CHUTZ, JJ.

Chutz J. Concurs with reasons

**WHIPPLE, C.J.**

In this divorce and community partition matter, the husband sought to appeal the trial court's April 16, 2020 judgment, which declared a Declaration of Separate Property with Reservation of Fruits and Revenues to be invalid and unenforceable. After this court dismissed the appeal, the Louisiana Supreme Court granted writs and ordered this court to convert the appeal to an application for supervisory writs and to consider the application on the merits. Turnley v. Turnley, 2021-00779 (La. 10/1/21), 324 So. 3d 1041 (per curiam). Thus, we convert the appeal to an application for supervisory writs, and on review, we deny the writ application.

## FACTS AND PROCEDURAL HISTORY

On September 5, 2001, two days prior to the parties' marriage, Joseph Chad Turnley and Tami Jerrie Turnley signed a "Declaration of Separate Property with Reservation of Fruits and Revenues with Concurrence and Acknowledgement" ("the September 5, 2001 Declaration" or simply "the Declaration"), through which Mr. Turnley sought to declare the separate nature of his interests in several corporations as well as all fruits and revenues that may be derived therefrom. The September 5, 2001 Declaration was signed by a notary public, but was not signed before two witnesses.

Both Ms. Turnley and Mr. Turnley subsequently filed petitions for divorce, with Ms. Turnley filing her petition on June 9, 2017, and Mr. Turnley filing his petition on May 9, 2019. By judgment dated July 2, 2019, the parties were divorced.[1]

Thereafter, Ms. Turnley filed a Petition for Partition, in which she averred that Mr. Turnley's September 5, 2001 Declaration was invalid in that it was not an

---

[1]The trial court also signed a Stipulated Judgment on April 17, 2019, which provided, in part, that "IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that a Judgment shall issue decreeing a separation of property between the parties retroactive to the date of filing the *Petition for Divorce* of June 9, 2017 pursuant to Louisiana Civil Code Article 2374(C)."

2

authentic act or an act under private signature duly acknowledged and, further, was not filed in the conveyance records. Thus, she contended that the fruits and revenues of Mr. Turnley's separate property acquired during the community were community assets to be divided between the parties. Given the dispute between the parties as to the classification of the fruits and revenues of Mr. Turnley's separate property, Ms. Turnley also filed in these proceedings a petition for declaratory judgment, seeking a declaration that the September 5, 2001 Declaration was invalid for lack of conformity with the requirements of LSA-C.C. art. 2339.

Following a trial on the petition for declaratory judgment, where evidence and testimony were introduced, the trial court signed a judgment on April 16, 2020, declaring the September 5, 2001 Declaration to be invalid and unenforceable. From this judgment, Mr. Turnley sought to appeal.[2] This court dismissed the appeal as having been taken from a partial judgment that was not designated as final for purposes of immediate appeal in accordance with LSA-C.C.P. art. 1915(B)(1). Turnley v. Turnley, 2020-0849 (La. App. 1st Cir. 4/29/21) (unpublished), 2021 WL 1686231. Subsequently, the Louisiana Supreme Court granted Mr. Turnley's application for writs and ordered this court to convert the appeal to an application for supervisory writs and to consider the application on the merits. Turnley v. Turnley, 2021-00779 (La. 10/1/21), 324 So. 3d 1041 (per curiam). Thus, we convert the appeal to an application for supervisory writs and review the merits of the trial court's determination that the September 5, 2001 Declaration was invalid for lack of conformity with the requirements of LSA-C.C. art. 2339.

---

[2]The April 16, 2020 judgment also ordered Mr. Turnley to provide Mrs. Turnley an advance of $25,000.00 with full reservation of all rights to be addressed when the former community property is partitioned; however, Mr. Turnley seeks review of only the portion of the judgment declaring the September 5, 2001 Declaration to be invalid.

3

## DISCUSSION

Pursuant to LSA-C.C. art. 2339, the natural and civil fruits of a spouse's separate property are community property. However, the spouse who owns the separate property "may reserve them as his separate property by a declaration made in an authentic act or in an act under private signature duly acknowledged." Moreover, at the time of the September 5, 2001 Declaration at issue herein, LSA-C.C. art. 2339 further provided that as to the fruits and revenues of immovables, "the declaration is effective when filed for registry in the conveyance records of the parish in which the immovable property is located," and as to the fruits of movables, "the declaration is effective when filed for registry in the conveyance records of the parish in which the declarant is domiciled."[3]

Things in the possession of a spouse during the existence of a regime of community of acquets and gains are presumed to be community, but either spouse may prove that they are separate property. LSA-C.C. art. 2340. However, the party asserting the separate nature of the property acquired during the marriage has the burden of overcoming a strong presumption in favor of the community, and the proper burden of proof in overcoming the presumption of community in LSA-C.C. art. 2340 is a preponderance of the evidence. Succession of Hebert, 2003-0531, 2003-0532 (La. App. 1st Cir. 9/17/04), 887 So. 2d 98, 101, writ denied, 2004-2571 (La. 12/17/04), 888 So. 2d 872.

Through the September 5, 2001 Declaration at issue, Mr. Turnley sought to recognize the separate nature of his pre-marriage business interests and to further declare as his separate property the fruits and revenues of those separate business interests accruing during the community, as follows:

> Affiants [Joseph Chad Turnley and Tammi Marie Jerri] intend

---

[3]Louisiana Civil Code article 2339 now provides that the declaration reserving the fruits of separate property is effective when **a copy is provided to the other spouse** *and* the declaration is filed in the appropriate conveyance records. LSA-C.C. art. 2339 (as amended by La. Acts 2008, No. 855, §1, effective August 15, 2008).

4

to married [sic] on September 7, 2001, in East Baton Rouge Parish, Louisiana. Affiant, Joseph Chad Turnley, presently has as his separate property Turnley Company, Inc., which includes the subsidiary companies of Wonder Cuts, Inc. and Tri-Star Waste Services, Inc. Affiants hereby declare, agree and acknowledge that Wonder Cuts, Inc. and Tri-Star Waste Services, Inc., together with all holdings of each of those corporations and the holdings of Turnley Company, Inc. as they exist at this time are and shall remain the sole exclusive and separate property of Joseph Chad Turnley. Additionally, all fruits and revenues which may be derived therefrom shall remain the separate property of Joseph Chad Turnley. Affiants further acknowledge that any future openings under the aforementioned name of Wonder Cuts, Inc. or Tri-Star Waste Services, Inc. shall be the sole exclusive and separate property of Joseph Chad Turnley and that all fruits and revenues derived therefrom shall likewise be the separate property of Joseph Chad Turnley.

Affiant, Tammy Marie Jerri, acknowledges and agrees to the designations made herein by Joseph Chad Turnley.

As stated above, both Mr. Turnley and Ms. Turnley signed the September 5, 2001 Declaration prior to their September 7, 2001 marriage, and it was also signed by a notary public. However, the September 5, 2001 Declaration undisputedly was not signed in the presence of two witnesses, nor was it filed in the conveyance records either before or during the parties' marriage. Rather, on October 7, 2019, after the July 2, 2019 judgment of divorce was rendered, retroactively terminating the community property regime, Mr. Turnley signed an Act of Acknowledgement and Confirmation ("the October 7, 2019 Confirmation"), through which Mr. Turnley "recognize[d] and acknowledge[d]" his signature on the September 5, 2001 Declaration. Mr. Turnley then filed the **October 7, 2019** Confirmation together with the **September 5, 2001** Declaration in the conveyance records of Ascension Parish on October 17, 2019, and in the conveyance records of East Baton Rouge Parish on October 25, 2019.

While recognizing that both Mr. Turnley and Ms. Turnley had signed the September 5, 2001 Declaration, the trial court, in oral reasons for judgment, nonetheless found that the Declaration lacked proper form and had not been filed

5

in the conveyance records of the appropriate parish. Moreover, while further recognizing that Mr. Turnley had subsequently duly acknowledged his signature and had filed the October 7, 2019 Confirmation and the September 5, 2001 Declaration for registry in the conveyance records, the trial court noted that neither of those events had occurred prior to the termination of the community property regime. Accordingly, the trial court concluded that the September 5, 2001 Declaration was invalid and unenforceable because of the lack of proper form and the failure to file in the conveyance records.

Mr. Turnley now argues that although the September 5, 2001 Declaration admittedly was not signed in the presence of two witnesses or duly acknowledged at the time of execution, it was nonetheless effective between the parties when they signed it because Ms. Turnley had actual notice of the Declaration. According to Mr. Turnley, the required filing of a declaration reserving the fruits of separate property for registry in the conveyance records pursuant to the 2001 version of LSA-C.C. art. 2339 served the dual purpose of providing constructive notice to the other spouse and to third persons. He argues that because Ms. Turnley had **actual knowledge** of the September 5, 2001 Declaration from the date of its execution by her signature thereon (even though her signature was not necessary), any public policy reasons for filing the Declaration in the conveyance records were met by her signature and corresponding immediate knowledge.[4] Accordingly, he contends, because the purpose of requiring recordation is to provide knowledge, the purpose and intent of LSA-C.C. art. 2339 was fully accomplished when the September 5, 2001 Declaration was signed by the parties.

Additionally, Mr. Turnley contends that the September 5, 2001 Declaration

---

[4]Regarding its effectiveness as to third parties, Mr. Turnley contends that while the September 5, 2001 Declaration was not filed in the conveyance records at the time it was signed, the later filings for registry in the conveyance records of Ascension and East Baton Rouge Parishes on October 17 and 25, 2019, effectuated notice as to third persons.

6

was a valid contract between the parties, and, if not immediately valid at the time it was executed, it is now valid, retroactive to the date of its signing, as a result of his subsequent acknowledgement and confirmation of the Declaration, as acknowledgement of his signature could be accomplished at any time. Mr. Turnley further asserts that to the extent the September 5, 2001 Declaration did not comply with the requirements of LSA-C.C. art. 2339 at the time it was signed, the Declaration was a relative nullity in that it violated a rule intended for the protection of private parties rather than a rule of public order intended for the protection of a large class of persons. He contends that pursuant to LSA-C.C. art. 1844, a confirmation of a relative nullity is retroactive to the date of the confirmed act.[5] Thus, according to Mr. Turnley, his later October 7, 2019 Confirmation of the September 5, 2001 Declaration and recording of the Confirmation together with the original Declaration *retroactively cured* any relative nullity in the Declaration to the date of its September 5, 2001 execution.

At the outset, we note that Mr. Turnley's argument that the September 5, 2001 Declaration was effective between the parties when they signed it by virtue of Ms. Turnley's actual notice of the Declaration completely ignores the form requirements of LSA-C.C. art. 2339, which provides that a declaration reserving the fruits of separate property must be "made in an authentic act or in an act under private signature duly acknowledged." In Acurio v. Acurio, 2016-1395 (La. 5/3/17), 224 So. 3d 935, 938-940, although in the context of a matrimonial agreement signed by the parties before their marriage,[6] the Louisiana Supreme

---

[5]"Confirmation is a declaration whereby a person cures the relative nullity of an obligation." LSA-C.C. art. 1842. Pursuant to LSA-C.C. art. 1844, "[t]he effects of confirmation and ratification are retroactive to the date of the confirmed or ratified obligation" although "[n]either confirmation nor ratification may impair the rights of third persons."

[6]Pursuant to LSA-C.C. art. 2328, a "matrimonial agreement" is a contract establishing a regime of separation of property or modifying or terminating the legal regime. Spouses may enter into a matrimonial agreement before or during marriage; however, they may enter into a matrimonial agreement that modifies or terminates a matrimonial regime during marriage only upon joint petition and a finding by the court that it serves their best interests and that the spouses understand the governing principles and rules. LSA-C.C. art. 2329.

Court addressed the form requirements of such a matrimonial agreement, which, similar to the form requirements of a LSA-C.C. art. 2339 declaration of separateness, requires that the agreement be "made by authentic act or by an act under private signature duly acknowledged by the spouses." See LSA-C.C. art. 2331. In Acurio, the spouses, who were previously married to and divorced from one another, executed a matrimonial agreement prior to their remarriage. The document was not executed as an authentic act, having been signed by the parties before a notary and only one witness. After a judgment of divorce was signed, the wife sought to exclude evidence of the matrimonial agreement for failure to comply with the form requirements of LSA-C.C. art. 2331. The trial court granted the motion to exclude the agreement, concluding that it was null and void based upon a lack of form prior to the entering of the marriage, noting that it was not executed as an authentic act or as an act under private signature duly acknowledged prior to the marriage. On appeal, the appellate court reversed the trial court. Acurio, 224 So. 3d at 936. In reversing the appellate court, the Supreme Court noted that the legal regime of community property is presumed, LSA-C.C. art. 2340, and that in light of that presumption and the strong legislative policy favoring community rights, the Court interprets statutory provisions that waive those rights *stricti juris*. Acurio, 224 So. 3d at 938.

Moreover, reading the Civil Code articles addressing matrimonial agreements *in pari materia*, the Court concluded that the requirements for entering into a matrimonial agreement both before and during a marriage clearly indicated legislative intent "to make it onerous to waive one's community property rights, at least to the extent that certain procedural hurdles were put in place to ensure the parties consider the consequences of entering into a matrimonial agreement that is not favored by public policy." Looking at the context within which the "private signature duly acknowledged" language was placed as an alternative to the

8

authentic act, the Court further found that "the very fact that 'an act under private signature duly acknowledged' is presented as the sole alternative to an 'authentic act' is a telling recognition that both methods of execution are meant to be sufficiently arduous so as to provoke thought and consideration before entering into the agreement." Acurio, 224 So. 3d at 939-940. Thus, the Court reasoned, "if procedural burdens are placed on the spouses by way of authentic act before marriage and court approval during marriage, it logically follows that **the relaxed act of signing one's private signature, without the accompanying requirement of it being duly acknowledged, is disallowed.**" Acurio, 224 So. 3d at 938 (emphasis added).

We agree with the reasoning of the Supreme Court in Acurio. The fact that an act under private signature duly acknowledged is presented "as the sole alternative" to an authentic act as the two methods by which a spouse may reserve the fruits of his or her separate property is a "telling recognition" that both methods of execution are "meant to be sufficiently arduous so as to provoke thought and consideration" before one spouse deprives the other spouse of those fruits, which, under the governing principles of the legal regime, would otherwise become community property. See Acurio, 224 So. 3d at 939-940. Accordingly, we find no merit to Mr. Turnley's assertion that Ms. Turnley's knowledge of the September 5, 2001 Declaration at the time of its execution somehow cured the deficiencies in its form.

Nor do we find any merit in Mr. Turnley's contention that any deficiency in form in the September 5, 2001 Declaration, as a relative nullity, was *retroactively* cured pursuant to LSA-C.C. art. 1844, by his October 7, 2019 Confirmation of his signature on the September 5, 2001 Declaration and the subsequent filing of the Declaration and Confirmation in the conveyance records of Ascension and East Baton Rouge Parishes. Rather, we note that LSA-C.C. art. 2339, as it existed at the

9

time the September 5, 2001 Declaration was signed, specifically provided that a reservation of fruits is "**effective when filed for registry in the conveyance records**," thus not allowing for retroactive effectiveness of such a reservation. (Emphasis added). In so providing, LSA-C.C. art. 2339 makes no distinction between effectiveness of the reservation as to the other spouse and effectiveness as to third persons. Moreover, we note that LSA-C.C. art. 1844 addresses confirmation and ratification of a relatively null **obligation**. An obligation, by definition is a legal relationship between two persons, LSA-C.C. 1756, whereas a LSA-C.C. art. 2339 reservation of fruits is a **unilateral declaration**, rather than an obligation. Accordingly, the more general provision of LSA-C.C. art. 1844, stating that the effects of confirmation of a relatively null obligation are retroactive to the date of the confirmed obligation, cannot prevail over the more specific article applicable to the effectiveness of a reservation of the fruits of separate property.[7]

If, in crafting LSA-C.C. art. 2339, the legislature had intended the filing of a declaration of separateness of fruits to impact the effectiveness of the declaration only as to third persons and not as to the spouses, it could have enacted language to that effect. However, the language of LSA-C.C. art. 2339 at the time of the September 5, 2001 Declaration provided more broadly that the effectiveness of a declaration of separateness of fruits occurs "upon filing in the conveyance records," without distinguishing between its effectiveness between the spouses or

---

[7]See generally LSA-C.C. art. 1916 (providing that "[n]ominate contracts are subject to the special rules of the respective titles when those rules modify, complement, or depart from the rules of this title [conventional obligations or contracts]"), and Acurio, 224 So. 3d at 938 (wherein the Supreme Court rejected the husband's attempt to rely on the general rules of obligations for his position that there was no temporal requirement for acknowledgement of a private signature to a matrimonial agreement, holding instead that "the collective rules assigned to matrimonial agreements, as nominate contracts, dictate that acknowledgement of spouses' signatures must occur prior to the marriage ...").

10

as to third persons.[8] LSA-C.C. art. 2339 (prior to amendment by Acts 2008, No. 855, § 1). Thus, the fruits of separate property are community until such time as a properly executed declaration is filed in the appropriate conveyance records.[9] See Major v. Major, 94-1885, 94-1886 (La. App. 4th Cir. 4/3/96), 671 So. 2d 571, 580 (where the parties were married on January 30, 1960, and the wife executed and recorded a declaration, declaring that the fruits of her separate property were to be separate, the rents from her separate property from August of 1987 forward were her separate property). Accordingly, because neither the form nor the filing requirements necessary to give legal effect to the September 5, 2001 Declaration were completed at any point prior to or during the parties' marriage, we find no error in the trial court's determination that the Declaration was invalid and ineffective.

Moreover, even if we were to find merit to Mr. Turnley's arguments that the filing of the September 5, 2001 Declaration in the appropriate conveyance records governs the effectiveness of the declaration **only** as to third persons and not as to the parties themselves where both parties signed the Declaration and acknowledged their signatures thereon, we note that neither party duly acknowledged their signatures until such time as the parties were already divorced and the community regime thus terminated. While Mr. Turnley asserts that LSA-

---

[8]Any argument that a spouse's knowledge of such a declaration by the other spouse somehow renders the declaration effective prior to its filing in the appropriate conveyance records is also belied by the current, amended language of LSA-C.C. art. 2339. As stated in footnote 3, *supra*, under the language of the current version of LSA-C.C. art. 2339, such a declaration is not effective until "a copy is provided to the other spouse **and** the declaration is filed for registry" in the appropriate conveyance records. (Emphasis added). Accordingly, a spouse's knowledge of the declaration upon being provided with a copy thereof would be insufficient to effectuate the declaration.

[9]Indeed, even if we were to consider the September 5, 2001 Declaration as a matrimonial agreement, signed by both parties prior to their marriage through which they sought to modify the legal regime, see LSA-C.C. arts. 2328 & 2329, the conclusion would be the same. While the lack of recordation of such a matrimonial agreement would only restrict its effectiveness as to third persons, see LSA-C.C. art. 2332, the failure to execute the Declaration either by authentic act or by an act under private signature duly acknowledged by the spouses **prior to their marriage** would render it invalid. See LSA-C.C. art. 2331 & Acurio, 224 So. 3d at 938-940.

11

C.C. art. 1836[10] establishes no time restriction on when an acknowledgement of a private signature may be made, such that the Declaration was valid upon his acknowledgement of their signatures, we conclude that some temporal element as to the acknowledgement of a private signature on a declaration of separateness of fruits of separate property must exist.

In Acurio, while the parties' matrimonial agreement was not executed in an authentic act, it was duly acknowledged after divorce proceedings had begun. While the appellate court reasoned that the spouses did not have to acknowledge their signatures prior to marriage for the agreement to be valid, the Supreme Court disagreed. Noting that an authentic act constitutes full proof of the agreement it contains as against the parties, their heirs, and successors, thereby preventing parties from contesting their signatures during divorce proceedings when the parties are most contentious, the Court held that it likewise "stands to reason that the requirement of acknowledgement is one with similar *temporal constraints* and consequences such that the proof of one's signature is as much an element of proof as it is of required form." Acurio, 224 So. 3d at 939 (emphasis added). Accordingly, the Court concluded that "in order to have legal validity, a matrimonial agreement executed prior to marriage must be made by authentic act or signed *and* duly acknowledged prior to marriage." Acurio, 224 So. 3d at 940; see also Rush v. Rush, 2012-1502 (La. App. 1st Cir. 3/25/13), 115 So. 3d 508, 511-512 (where parties executed a matrimonial agreement by private act prior to marriage, but did not perfect all of the form elements required of LSA-C.C. art. 2331 prior to marriage, there was no valid matrimonial agreement).

---

[10]Louisiana Civil Code article 1836 provides in pertinent part, as follows:

An act under private signature may be acknowledged by a party to the act by recognizing the signature as his own before a court, or before a notary public, or other officer authorized to perform that function, in the presence of two witnesses. An act under private signature may be acknowledged also in any other manner authorized by law.

12

We recognize that the temporal element imposed by the Supreme Court with regard to matrimonial agreement requiring that a spouse's private signature be duly acknowledged *prior to marriage* is justified by the fact that the procedural requirements for spouses entering into a matrimonial agreement become more onerous upon marriage, after which time spouses wishing to enter into a matrimonial agreement have the heightened requirement of seeking and obtaining court approval. See LSA-C.C. art. 2329. On the other hand, a spouse seeking to reserve the fruits of his or her separate property *during the marriage* is not likewise subjected to a more onerous procedure than that required before marriage. Rather, a spouse seeking to reserve the fruits of separate property must adhere to the same procedural burdens both before and during the marriage, i.e., "by a declaration made in an authentic act or in an act under private signature duly acknowledged." LSA-C.C. art. 2339.

Nonetheless, we find that, at the very least, the requirement of duly acknowledging a spouse's signature must necessarily occur *prior to the termination of the community regime*. Indeed, the community classification of the fruits of a spouse's separate property (in the absence of proper declaration of separateness) necessarily ceases as to fruits produced *after the termination of the community regime*. See Succession of Doty, 496 So. 2d 543, 544-545 (La. App. 1st Cir. 1986) (where the husband did not file a declaration to the contrary, the fruits of his separate property were community assets, but the wife had a right to those fruits only during the community's existence and not after her husband's death). Thus, it stands to reason that such an acknowledgement *after divorce*, when the community has already ceased to exist,[11] has no practical or legal effect as it is simply too late.

---

[11] A judgment of divorce terminates a community property regime retroactively to the date of filing of the petition in the action in which the judgment of divorce is rendered. LSA-C.C. art. 159.

13

Because neither the form nor the filing requirements for an Article 2339 declaration were perfected at any point during the Turnleys' marriage, the fruits of Mr. Turnley's separate property were necessarily community property under the clear provisions of LSA-C.C. art. 2339. However, such a classification necessarily terminated upon the termination of the community property regime by the parties' divorce. Because Mr. Turnley's acknowledgment of his signature on the September 5, 2001 Declaration did not occur until over eighteen years later, at a time when the parties were already divorced and the community already terminated, the acknowledgement clearly occurred too late to have any effect on the otherwise invalid September 5, 2001 Declaration. As such, we find no error in the trial court's determination that the September 5, 2001 Declaration was invalid and ineffective.

## CONCLUSION

For the above and foregoing reasons, as directed on remand, we convert Mr. Turnley's appeal of the trial court's April 16, 2020 judgment to an application for supervisory writs and deny the writ application.

**APPEAL CONVERTED TO AN APPLICATION FOR SUPERVISORY WRITS; WRIT DENIED.**

14

TAMI JERRIE TURNLEY

VERSUS

JOSEPH CHAD TURNLEY

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2020 CW 0849R

**Chutz, J., concurring.**

I agree with the majority's conclusion that the 2001 Declaration is invalid due to noncompliance with the required statutory formalities, despite the fact that Mrs. Turnley's signature on the Declaration signified her knowledge of and agreement with its contents. I concur for the purpose of noting that, given the procedural posture of this case, this court has not considered the issue of whether Mrs. Turnley's concurrence in and agreement with the Declaration's statement that the fruits and revenues of Mr. Turnley's separate property were to remain his separate property, together with other pertinent circumstances, created a natural obligation on her part to Mr. Turnley that would prevent her from claiming a portion of those fruits and revenues. See La. C.C. arts. 1760 & 1761; *Deshotels v. Deshotels*, 13-1406 (La. App. 3d Cir. 11/5/14), 150 So.3d 541, 545-46.